**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DOROTHY JACKSON,** **Plaintiff** | : | **CIVIL ACTION** |
| **v.** | : | **NO. 07-481** |
| **J. LEWIS CROZER LIBRARY, et al.,** **Defendants** | : | |

**M E M O R A N D U M**

**STENGEL, J.** **January 7, 2009**

Plaintiff Dorothy Jackson alleges that her employer, the J. Lewis Crozer Library and its director, Katie Newell (jointly "defendants"), discriminated against her by pretextually firing her in violation of both the Americans with Disabilities Act[1] and the Pennsylvania Human Relations Act.[2] Defendants filed a motion for summary judgment.[3] For the following reasons, I will deny defendants' motion.

## I. BACKGROUND[4]

In April 1995, Crozer Library hired Jackson as a part time children's librarian.[5]

---

[1]Codified at 42 U.S.C. §12101 *et seq.*

[2]Codified at 43 P.S. §951 *et seq*.

[3]Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

[4]The following factual recitation is taken in the light most favorable to plaintiff, the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

[5]Jackson previously worked for Crozer Library as the head librarian in 1975; she left that position when her family moved out of state. (Compl. ¶ 7).

(Compl. ¶ 8). At that time, Mr. James Gear was the Director of Crozer Library. (Compl. ¶ 9). Jackson informed Gear that she suffered from macular degeneration and, as a result, she was not able to drive.[6] (Compl. ¶ 9). Nevertheless, Jackson told Gear that with reasonable accommodations, namely flexible hours and a driver to transport her when needed, she would be able to perform the essential job duties. (Compl. ¶ 9). With these reasonable accommodations, Jackson worked for the library without issue for seven years. (Compl. ¶ 24).

In 2002, Gear retired from Crozer Library and Newell was appointed as the new director. (Compl. ¶ 9-10). Shortly after Newell took over, Jackson informed Newell of her disability and need for accommodations. (Compl. ¶ 12). Following this conversation, Newell began systematically reassigning plaintiff's duties to other librarians. (Compl. ¶ 13). Newell then decided to eliminate the part-time children's librarian position and create a full-time children's librarian position.[7] (Compl. ¶ 16). In June 2003, Crozer Library's Board of Directors decided to approve the full-time children's librarian position. (Compl. ¶ 16).

On June 26, 2003, Newell offered Jackson the full-time position and provided her

---

[6]Jackson's ophthalmologist has declared her legally blind. (Compl. ¶ 11).

[7]Newell asserts that Crozer Library created the full-time position because it was expanding services. She believed that a children's librarian needed to be there when children arrived. She also planned to increase the library's hours of operation.

with a copy of the job description.[8] (Compl. ¶ 16). Newell informed plaintiff that if she did not accept the full-time position, then she would be terminated. Approximately one week later, Newell asked Jackson whether she had made a decision regarding the full-time children's librarian position. (Compl. ¶ 17). Jackson responded that she could work 35 hours per week; however, she stated that because of her disability she required an accommodation of flexible work hours.[9] (Compl. ¶ 17).

In exchange for a flexible work schedule, Jackson proposed foregoing the full-time position's health insurance and vacation time. (Compl. ¶ 17). Additionally, Jackson stated that if she needed to hire a driver to fulfill her essential job duties, she would pay for the driver's services herself. (Compl. ¶ 18). Newell responded that the other full-time employees would not be required to drive Jackson; Jackson contends that she never recommended this scenario. (Compl. ¶ 18).

Following this exchange with Newell, Jackson wrote a letter to Mr. Dominic F. Pileggi, the President of the Crozer Library Board of Directors, reiterating her interest in the position and her request for accommodations. Jackson also copied the letter to Ms. S. Jean Wilson, a member of the Board of Directors. (Compl. ¶ 19). Defendants refused to

[8]The job description stated that the full-time position required 35 hours per week plus some evening and Saturday hours to be determined on an ongoing basis. (Compl. ¶ 16). The description described the position's duties as satisfying the hours and attending outreach programs.

[9]Newell claims that Jackson never accepted the position, but rather expressed interest in the position and attempted to negotiate to remain as one of two part-time children's librarians. Additionally, Newell asserts that Jackson requested the flexible work hour accommodation in order to finish home schooling her child, not because of her disability.

allow Jackson to accept the full-time position with the requested accommodations. (Compl. ¶ 21). Jackson was terminated on July 15, 2003.[10] (Compl. ¶ 21).

Jackson filed this lawsuit on February 1, 2007. (Document #1). Her complaint asserts claims for employment discrimination and retaliatory discrimination under the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. §951 *et seq.* She is seeking injunctive and declaratory relief, back pay, front pay, punitive damages, compensation for emotional distress and humiliation, and attorney's fees. Defendants filed a motion for summary judgment on July 15, 2008. (Document #56). Jackson responded on August 18, 2008 (Document #61).

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law.

---

[10] In a letter dated October 3, 2003, the Crozer Library Board of Directors stated that Jackson's termination was being upheld and that the Board would "take no further action regarding this matter."

Id.

A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. All inferences must be drawn and all doubts resolved in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Gordon v.Youmans, 358 F.2d 261, 262 (2d Cir. 1965); Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985); Liberty Lobby, 477 U.S. at 255. The court must decide (not whether the evidence unmistakably favors one side or the other but) whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Liberty Lobby, 477 U.S. at 252. If the non-moving party has met the extraordinarily low burden of evidence and

offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. DISCUSSION

Summary judgment is not appropriate in this case because there is an essential factual dispute remaining at the center of this litigation: whether Ms. Jackson accepted the full-time children's librarian position on July 1, 2003. Jackson says she accepted the position on that date. That day she also proposed or requested some accommodations that would allow her to do the job without burdening the library with any expense related to those accommodations. These accommodations were not pre-requirements to her acceptance of the position; rather, she states that it was a request made of her employer upon her acceptance. Jackson testified at her deposition that she told Newell and the Board of Directors that she accepted the full-time position. She further alleges that defendants failed to engage her in a discussion about her disability and resultant need for accommodation in the form of a flexible schedule so she could be transported by her husband. Significantly, the notes Newell took that day do not contradict Jackson's testimony about their conversation.

Defendants, however, believe Jackson refused to work a rigid, 9:00 A.M. until

5:00 P.M. schedule and, by virtue of that refusal, rejected the offer of full-time employment. Ms. Willie May Wells, a member of the Board of Directors, stated in her deposition that "[her] understanding of the letter was that if [plaintiff] accepted the full time position, that she needed certain arrangements made."

One thing is clear: whatever version of the story is the correct one, it is material to the dispute. For that reason, summary judgment is unwarranted.

**A. Employment Discrimination**

Jackson has established a *prima facie* case of disparate treatment under the ADA because she has shown the requisite three facts. First, she "is a disabled person within the meaning of the ADA. Second, she "is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer." Third, she "has suffered an otherwise adverse employment decision as a result of discrimination." Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000).

Having demonstrated a *prima facie* case of discrimination, Jackson is entitled to "a presumption that the employer unlawfully discriminated" St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993) (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)). In order to rebut the presumption, the library bears the burden to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Here, the library and

Newell have suggested that the reason Jackson was terminated was her rejection of the full-time position (a fact Jackson disputes) and the elimination of her part-time position. As the library and Newell carried its burden by articulating this fact (albeit a disputed one), Jackson demonstrated that the defendants' reason was not its true reason, but rather a pretext for discrimination. Id. at 804.

Jackson has produced evidence from which a jury can reasonably infer (1) that they are not believable or (2) that a discriminatory reason was more likely than not a cause in the decision. This inference may be drawn from the inconsistencies, weaknesses, or implausibilities in the employer's reasons. Fuentes v. Perskie, 32 F. 3d 759, 762 (3d Cir. 1944). Jackson has shown pretext both by (1) casting sufficient doubt upon the legitimate reasons proffered by the defendants so that a reasonable fact finder could conclude that the reason was a *post hoc* fabrication or else did not actually motivate the employment action and (2) by identifying evidence that would allow a reasonable fact finder to "infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Id. Evidence of pretext exists in the form of uncontradicted evidence that one of Newell's motivations in rearranging the employee schedule and positions was to achieve *greater* flexibility in everyone's schedule, including her own. Newell Depo., page 123, lines 14-17. Additionally, Newell's mistreatment of Jackson began after Jackson revealed to Newell her disability. No one at the library, including Newell, engaged with Jackson to determine what type of accommodations she required.

Instead, defendants assumed they knew what Jackson required (at least that it involved being absent during a portion of the requisite 9:00 A.M. - 5:00 P.M. hours), but now admit that none of them actually knew nor cared enough to ask.

**B. Retaliatory Discharge**

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must demonstrate: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a casual connection between the employee's protected activity and the employer's adverse action." Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997); see also Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 286 (3d Cir. 2001). Defendants argue that Jackson has not introduced any evidence that she engaged in a protected activity. Protected activities are informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination either in the industry or society in general, and supporting co-workers who have filed formal charges for discrimination. Sumner v. U.S. Postal Service, 899 F.2d 203, 209 (N.Y. 1990); see also Grant v. Hazelett Strip-casting Corp., 880 F.2d 1564, 1569 (2d Cir. 1989).

Newell insists that one thing that "helped contribute to [her] decision" to terminate Jackson was the fact that Jackson went over her head by sending letters (with identical

substance) to Mr. Pileggi and to Dr. Wilson about her request for accommodations after Newell was unreceptive. Jackson's letter asserts her concern, albeit somewhat indirectly, about her disability discrimination and concludes, "I have contributed my efforts to the library over the last eight years. . . . I still have much to contribute, even if I do have a handicap."

Therefore, Jackson has produced sufficient evidence that she engaged in a protected activity prior to and/or contemporaneous with her termination. As a result, defendants' request for summary judgment of Jackson's retaliatory discharge claim is denied.

## C. Discrimination by Refusing Jackson's Request for Reasonable Accommodations

To establish a *prima facie* case of discrimination under the ADA, the plaintiff must demonstrate: "(1) [she] is a disabled person within the meaning of the ADA; (2) [she] is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [she] has suffered an otherwise adverse employment decision as a result of discrimination." Gual v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir. 1998); see also Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996). Defendants assert that Jackson was not "otherwise qualified."

A two-part test is used to determine whether someone is "a qualified individual with a disability." 29 C.F.R. pt. 1630.1, App. at 353-54 (1997). First, a court must

consider whether "the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." Id. at 353. Second, the court must consider "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." Id.

Defendants contend that Jackson was not able to perform the essential functions of the job - namely, working the required hours. The Third Circuit has provided the following considerations for determining the essential functions of a job: (1) whether the employer believed the function is essential, (2) any written job description, (3) the amount of time spent performing the function, (4) the consequences of not requiring the employee to perform the function, (5) the terms of a collective bargaining agreement, (6) the work experience of the past person employed in the position, and (7) the current experience of persons employed in the position. Turner v. Hershey Chocolate U.S.A., 440 F.3d 604, 612 (3d Cir. 2006).

Accordingly, the only factors for consideration are what the employer believed to be an essential job function, what the job description provides, and the consequences of not requiring the employee to perform the function. Based on the factors set forth in Turner, the regularly scheduled work hours qualified as an essential function. First, defendants, the employer and the supervisor, believed that the regularly scheduled work hours were an essential function of the job. Second, the job description described the

regular work hours as a primary function. Third, both Newell and Ms. Barbara Lidle testified about the consequences of not requiring Jackson to work a regular schedule; specifically, there would not be a children's librarian present when the children arrived.

However, Jackson insists that she was capable of working full time and not necessarily incapable of working the 9:00 A.M. to 5:00 P.M. hours or obtaining transport to the necessary outreach events at no cost to the library. She merely requested an accommodation or the chance to engage her employer in a discussion about possible accommodations and insists that this request was repeatedly refused. Jackson claims that she was willing and able to work a regular schedule with reasonable accommodations. As a result, defendants' motion for summary judgment of Jackson's claim that defendants failed to make reasonable accommodations is denied.

**D. Discrimination by Refusing to Engage in Interactive Negotiations**

To prove a defendant failed to engage in interactive negotiations: "first, the plaintiff bears the burden of proving that she is otherwise qualified; if an accommodation is needed, the plaintiff must show, as part of her burden of persuasion, that an effective accommodation exists that would render her otherwise qualified. On the issue of reasonable accommodation, the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed the benefits." Armstrong v. Burdette Tomlin Memorial Hospital, 438 F.3d 240 (3d Cir. 2006).

Jackson proposed (or attempted to propose) an accommodation that would allow

her to fill the full-time position in a manner acceptable to defendants and at no additional cost to them. Her letters to Pileggi and Wilson attempted to show that an effective accommodation existed, yet Newell failed to engage in interactive negotiations regarding those accommodations. In fact, Newell admits that she did not even ask Jackson what she meant by "flexible." Newell Depo. Page 143, line 4 - page 144, line 8. Therefore, defendants' motion for summary judgment on Jackson's claim that defendants refused to engage in an interactive process with her is denied.

**E Number of Library Employees**

Defendants claim that Jackson's claims pursuant to 42 U.S.C. § 2000(e) ("Title VII") should be dismissed because Crozer Library has never employed fifteen employees as required by these statutes. Under 42 U.S.C. § 12111, an employer is defined as: "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar years."

There remains (somewhat surprisingly, given the fact that discovery has concluded and the information would seem to be easily ascertainable) a factual dispute about the number of employees the library had during 2003. If the library did indeed have fewer than the statutorily required number of employees, they should have presented more reliable evidence of that fact.

The record reveals testimony that the library had more than 15 employees as well as

testimony that it had fewer than 15 employees. Newell testified that there were only thirteen employees at all relevant times. The library has produced a copy of its payroll records for the quarter ending March 31, 2003, which shows that defendant had thirteen employees. It would seem that the library is in the best position to know how many employees it had during the relevant time period, however, the payroll information the library has disclosed reveals only information for one quarter of 2003. Therefore, the case will proceed to trial with this essential element of Jackson's claim pled and supported with specific evidence.

In Arbaugh v. Y.H. Corporation, the plaintiff, a former bartender, claiming sexual harassment, brought a Title VII claim and corresponding state tort claims against her former employer. 546 U.S. 500, 500 (2006). The Supreme Court addressed whether the numerical qualification contained in Title VII's definition of "employer" affects federal jurisdiction or serves as an element of a Title VII claim. Id. at 503. The Supreme Court held that "the threshold number of employees for application of Title VII of the Civil Rights Act of 1964 is an element of the plaintiff's claim for relief, not a jurisdictional issue." Id. at 516; see also Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 77 (3d Cir. 2003). Further the court determined that "[i]f satisfaction of an essential element of a claim is at issue, the jury is the proper trier of contested facts." Arbaugh, 546 U.S. at 501; see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-51 (2000).

Jackson has presented evidence from which a reasonable trier of fact could find

that the library had more than fifteen employees. First, Jackson claims the record establishes that a new employee, Ms. Jata Gosh, was hired by Crozer Library on June 9, 2003. Further, Jackson claims two part-time employees were hired after Newell expanded the library's hours of operation. Finally, Jackson claims the library employed a security guard and a part-time custodian during the relevant time period. Since Jackson has presented evidence that Crozer Library employed the required number of employees during the relevant period of time, under Arbaugh, she has satisfied the numerical qualifications of a Title VII claim. As a result, defendants' motion for summary judgment of Jackson's claims pursuant to Title VII is denied.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is denied in its entirety. An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DOROTHY JACKSON,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 07-481** |
| | : | |
| **J. LEWIS CROZER LIBRARY, et al.,** | : | |
| **Defendants** | : | |

**ORDER**

**AND NOW**, this 7th day of January, 2009, upon consideration of defendants' motion for summary judgment (Document #56) and plaintiff's response thereto (Document #61), it is hereby **ORDERED** that defendants' motion is **DENIED**.

BY THE COURT:

/s Lawrence F. Stengel
LAWRENCE F. STENGEL, J.