# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOROTHY JACKSON,** | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 07-481 |
| | : | |
| **J. LEWIS CROZER LIBRARY, et al.** | : | |
| Defendants | : | |

**Stengel, J.**                                                                                                     **August 31, 2010**

      Dorothy Jackson was a part-time children's librarian at J. Lewis Crozer Library in Chester, Pennsylvania. She suffers from macular degeneration and is unable to drive. The Crozer Library made the part-time children's librarian position into a full-time position and offered the full-time position to Ms. Jackson. After some discussions about whether Ms. Jackson was interested in the full-time position, the Crozer Library terminated her employment. Ms. Jackson filed this lawsuit alleging the termination was in violation of the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., and the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. I dismissed her federal claims and the case was heard in a bench trial on her remaining state law claims.[1]

---

[1] See Order, Jackson v. J. Lewis Crozer Library, No. 07-481 (E.D. Pa. filed Feb. 2, 2010) (stipulating to a bench trial on the PHRA claims).

**FINDINGS OF FACT**

1. Dorothy Jackson worked as the head librarian at J. Lewis Crozer Library in Chester, Pennsylvania from 1971 to 1976. She left that position when her family moved out of state.

2. In April, 1995, the Crozer Library hired Ms. Jackson as a part-time children's librarian.

3. At that time, James Gear was the director of the Crozer Library.

4. During the time Mr. Gear was the director, Ms. Jackson usually worked from 9:30 a.m. until 1:30 p.m. in her capacity as part-time children's librarian. She and Mr. Gear, however, would set her hours under mutual agreement.

5. At all material times, Ms. Jackson was an at-will employee of the Crozer Library.

6. Ms. Jackson's duties included organizing the children's library, arranging for children's programs to be held in the library building, and engaging in outreach activities.

7. Ms. Jackson has macular degeneration[2] and is legally blind.

8. Because of her macular degeneration, Ms. Jackson was unable to drive and relied on her husband to provide her with transportation to and from work.

---

[2] Macular degeneration is a "leading cause of visual diminution in the elderly." Its symptoms include "[a] slow or sudden, painless loss of central visual acuity." "Occasionally the first symptom is visual distortion from one eye." The Merck Manual on Diagnosis and Therapy at 2232, Fifteenth Edition (Merck Sharp & Dohme Research Laboratories 1987).

9.      Ms. Jackson functioned in her capacity as children's librarian at the Crozer Library with the condition of macular degeneration for approximately seven years.

10.     In 2002, Mr. Gear retired as director of the Crozer Library.

11.     In the Fall of 2002, the Crozer Library hired Katherine Newell as director of the Crozer Library.  Ms. Newell previously had been the research director at the Hagley Museum and Library and a faculty member at Lincoln University.   The Crozer Library searched for a new director for approximately one year.

12.     As the director of the Crozer Library, Ms. Newell supervised between ten and twelve employees.

13.     When Ms. Newell started, the staff often gossiped, came in late, ran errands during work hours, talked on their cell phones, and played games.  At a June 17, 2003 staff meeting Ms. Newell informed her staff that she had spoken with Senator Dominic Pileggi, president of the Crozer Library Board of Directors, concerning the time she spent dealing with her employees' personal issues and that he urged her to "get rid of those people who are not willing to work with [her]."  Ms. Newell was attempting to end the personal issues and gossip that interfered with the employees' ability to do their jobs.

14.     Mr. Gear participated in a one-week orientation program for Ms. Newell when she became director.  During this time, Mr. Gear told Ms. Newell that Ms. Jackson had macular degeneration and was unable to drive.

15. Ms. Jackson continued as children's librarian after Ms. Newell became director.

16. During the time she served as children's librarian on a part-time basis, Ms. Jackson also home schooled her son. Her part-time schedule at the library provided her with an opportunity to provide home schooling to her son.

17. At the time Ms. Newell became director, Ms. Jackson was still home schooling her son, who was at a high school level.

18. In 2003, Ms. Newell recommended to the Board of Directors of the Crozer Library that the position of children's librarian be made a full-time position. Ms. Newell wanted to make the children's librarian position a full-time position because a full-time children's librarian would be able to conduct outreach, after school programs, morning story times, and better meet the community's needs.

19. At the April and June 2003 board meetings, the Board of Directors approved the position of full-time children's librarian. See Plaintiff's Trial Exh. 4 at Minutes of Board Meeting, J. Lewis Crozer Library, June 25, 2003. The full-time position was for a 35-hour work week and required some evening and Saturday hours. See Plaintiff's Trial Exh. 5.

20. The Board of Directors also approved a full-time reference librarian.

21. On June 26, 2003, Ms. Newell and Ms. Jackson met to discuss the children's librarian position. At that time, they reviewed a job description which had

been prepared by Ms. Newell with the help of John W. Nails, Esquire, solicitor for the Crozer Library Board of Directors. This job description had been approved by the Board of Directors.

22. One aspect of the full-time children's librarian position, as envisioned by Ms. Newell, was for the children's librarian to be available in the afternoons for after school programs. Ms. Jackson was unable to meet this need with her 9:30 to 1:30 work schedule.

23. Ms. Newell also was interested in enhancing the children's library outreach programs. These programs would require that the children's librarian go to schools and other organizations in the community as part of the Crozer Library outreach efforts. All parties understood that Ms. Jackson's inability to drive would require alternative means of transportation for Ms. Jackson to fulfill this aspect of the job.

24. At their meeting on June 26, 2003, Ms. Newell offered Ms. Jackson the full-time children's librarian position. They agreed Ms. Jackson would discuss the position with her family.

25 Ms. Jackson expressed concerns about the full-time position and noted she was home schooling her son.

26. In early July, 2003, approximately one week after Ms. Newell offered Ms. Jackson the full-time position, Ms. Newell approached Ms. Jackson to inquire if she was

going to accept the full-time position. Ms. Jackson stated she was interested in the full-time position but requested flexible work hours.

27.     Ms. Jackson did not accept the position.

28.     Ms. Jackson and Ms. Newell discussed Ms. Jackson's desire to incorporate flexible hours into the full-time position. Ms. Jackson suggested that the full-time position be filled with two part-time children's librarians. Ms. Jackson offered to remain as a part-time children's librarian and to supervise a second part-time children's librarian.

29.     At no time did Ms. Newell and Ms. Jackson discuss Ms. Jackson's macular degeneration as a reason why she requested flexible hours.

30.     Ms. Jackson's interest in remaining available to home school her son was a primary reason for her interest in remaining a part-time children's librarian. Although she alleges she requested the flexible schedule because she relied on her husband for transportation, both she and Dr. Jackson testified he would have been able to drop Ms. Jackson off at 9:00 a.m., pick her up at 5:00 p.m., pick her up on the week night she was scheduled to work late, and drive her on her scheduled Saturdays. Dr. Jackson testified Ms. Jackson was attempting to negotiate, and if they had known what the hours would be, transportation to and from work would not have caused a problem.

31.     Ms. Jackson wrote a letter, dated July 4, 2003, to Senator Pileggi and Dr. Jean Wilson, chairman of the Board of Director's personnel committee. Ms. Jackson discussed her disability and inability to drive, which would require an accommodation if

she was to provide outreach services. The letter also states "I was unprepared for the idea of working full time. I would really prefer to remain in a part time basis . . . . If I have to accept full time employment I would like to propose an idea that would save money for the library." She proposed that she would not receive health benefits or paid vacation in exchange for the ability to have a flexible schedule. She then stated the flexible schedule "would help to alleviate the extra burden that would fall on my family due to my handicap." She also proposed hiring a second part-time person. See Plaintiff's Trial Exh. 6.

32. On July 15, 2003, Ms. Newell wrote a letter to Ms. Jackson which stated as follows:

> Dear Dottie:
>
> After our conversation regarding the full-time Children's Librarian position at the J. Lewis Crozer Library, I have concluded that you are not the person I am looking for to fill this job. At this point, I am opening the job to others and advertising will begin this week.
>
> I expect to fill this position immediately. Therefore, as of July 16, 2003, the library is no longer in need of your services. Please turn in the keys to the cabinet and remove all personal items from your area before leaving that day. You will be paid through the end of July 2003.
>
> Please accept this letter as your notice of termination.
>
> Sincerely yours,
>
> Katie C. Newell,
> Director

Plaintiff's Trial Exh. 7.

33.     Following her termination, Ms. Jackson spoke briefly on the telephone with Dr. Wilson.  On September 20, 2003, Ms. Jackson wrote a second letter to Dr. Wilson, following-up on her telephone conversation and the prior letter to Senator Pileggi and Dr. Wilson.  See Plaintiff' Trial Exh. 12.  The letter stated she was "waiting to hear from" Dr. Wilson.  Id.

34.     In a letter dated October 3, 2003, the Board of Directors informed Ms. Jackson that her termination was being upheld and that the Board of Directors would "take no further action regarding this matter."  See Plaintiff's Exh. 8.

## DISCUSSION

Ms. Jackson alleges the Crozer Library discriminated against her because of her disability in violation of the Pennsylvania Humans Relations Act when it terminated her employment.[3]  She also alleges the Crozer Library retaliated against her for writing letters to board members alleging the library discriminated against her and for requesting a reasonable accommodation in violation of the PHRA.

---

[3] The PHRA is interpreted "in accord with its federal counterparts." Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996); accord Eshelman v. Agere Systems, Inc., 554 F.3d 426, 433 n.3 (3d Cir. 2009) (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)) (stating "an 'analysis of an ADA claim applies equally to a PHRA claim'").

**I.     Discrimination Based on Disability**

Ms. Jackson contends that her employment at the Crozer Library was terminated because of her vision disability. To prevail on her claim, Ms. Jackson must prove "(1) [she] is a disabled person within the meaning of the ADA; (2) [she] is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [she] has suffered an otherwise adverse employment decision as a result of discrimination." Stultz v. Reese Brothers, 835 A.2d 754, 760 (Pa. Super. Ct. 2003) (citing Gaul v. Lucent Tech., 134 F.3d 576, 580 (3d Cir. 1998)). "The term 'discrimination' in this context encompasses not only adverse employment actions driven by prejudice but also includes an employer's failure to make reasonable accommodations for the plaintiff's disabilities." Id. (citing Taylor v. Phoenixville Sch. Dist., 184 F.3d 296 (3d Cir. 1999)); accord Colwell v. Rite Aid Corp., 602 F.3d 495, 504 (3d Cir. 2010) (quoting Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004) (stating "[a]dverse employment decisions in this context include refusing to make reasonable accommodations for a plaintiff's disabilities."). "The term 'reasonable accommodation' . . . 'includes the employer's reasonable efforts to assist the employee and to communicate with the employee in good faith.'" Colwell, 602 F.3d at 504 (quoting Williams, 380 F.3d at 761).

There is no question here that Ms. Jackson has a disability. Her macular degeneration has rendered her legally blind. Nor is there any question that she is a

qualified individual. She has the training, experience and credentials which qualify her for a position as a children's librarian. There also is no question that Ms. Jackson suffered an adverse employment action. She was terminated, and this was confirmed in Ms. Newell's letter to her of July 15, 2003. The real question is whether Ms. Jackson suffered an adverse employment action because of discrimination. That is, what led to Ms. Jackson's termination and was the Crozer Library motivated by discrimination?

If there is any liability on the Crozer Library, it would rise from the way in which the full-time position was presented to Ms. Jackson and the Crozer Library's willingness to discuss with her ways in which she could perform the full-time job. Where an employee will have difficulty performing the demands of a job because of a disability, the employer is obliged to participate in the "interactive process." See Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 187 (3d Cir. 2009). This essentially means that the employer is required to engage in a dialogue with the employee to determine whether the employee can perform the duties of the job. Id. (engaging in an interactive process requires employers to "make a good-faith effort to seek accommodations"). Ms. Jackson contends that the Crozer Library failed to participate in the interactive process and, therefore, the library acted in bad faith. If this is the case, then the failure to engage in the interactive process would be evidence that the adverse employment action was the result of discrimination.

"An employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in good faith in the interactive process by showing that: '1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.'" Colwell, 602 F.3d at 504 (citing Williams, 380 F.3d at 772). "The interactive process does not dictate that any particular concession must be made by the employer; nor does the process remove the employee's burden of showing that a particular accommodation rejected by the employer would have made the employee qualified to perform the job's essential functions. All the interactive process requires is that employers make a good-faith effort to seek accommodations." Hohider, 574 F.3d at 187 (quoting Taylor, 184 F.3d at 317).[4] "[F]ailure to engage in the interactive process, in itself, does not constitute" a violation of the ADA. Hohider, 574 F.3d at 194.

The Crozer Library knew Ms. Jackson was disabled. The issue is whether Ms. Jackson actually requested an accommodation because of her disability. A careful consideration of the evidence indicates Ms. Jackson did not request an accommodation

---

[4] "Employers can show their good faith in a number of ways, such as taking steps like the following: meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered employee's request, and offer and discuss available alternatives when the request is too burdensome." Taylor, 184 F.3d at 317.

because of her disability. Rather, she requested the accommodation because she wanted to continue to home school her son.

Ms. Newell and the Board of Directors decided to make the children's librarian position a full-time position.[5] This was not done on a whim. It was done for reasons growing out of legitimate concerns for the ability of the Crozer Library to accommodate children's programs. Once this decision was made, Ms. Newell composed a job description, which was approved by the Board of Directors. This decision to change the children's librarian position from a part-time position to a full-time position was a reasonable step taken after a deliberative process engaged in by the Board of Directors.

This full-time position was then offered to Ms. Jackson. Whether it was offered begrudgingly, ambiguously, reluctantly or otherwise, it was offered to Ms. Jackson.[6] Ms. Jackson indicated to Ms. Newell that she, Ms. Jackson, was "interested" in the full-time job. This expression of interest falls short of an acceptance of the position. In fact, Ms. Jackson qualified her "interest" in the job by stating that she wanted flexible hours. There is no clear evidence as to what Ms. Jackson meant by "flexible hours." The strongest evidence of her intent comes from her suggestion that the full-time position be divided

---

[5] In her testimony, Ms. Newell was credible when she related her reasons for wanting to have a full-time children's librarian.

[6] There was dialogue between Ms. Newell and Ms. Jackson about the full-time position. It appears that the discussions were strained and there are conflicting versions of the story. Ms. Jackson contends that the discussions became heated. Ms. Newell does not deny that the discussions were difficult, but denies losing her temper or speaking out of turn to Ms. Jackson.

into two part-time positions. She suggested this directly to Ms. Newell and she followed this up with a description of her notion of two part-time positions in her letter to Senator Pileggi, president of the Board of Directors, and Dr. Wilson, chairman of the personnel committee. Ms. Jackson, in effect, wanted to redefine the job, not discuss how she could perform the job.

It appears that Ms. Jackson's primary motivation in wanting to remain part time was the need to remain available to home school her son. The adverse employment action was not taken because of Ms. Jackson's disability or for any discriminatory reason. Ms. Jackson's unwillingness to accept the full-time position as it was presented to her had more to do with her desire to home school her son. Working in a full-time capacity would have kept her at the library full time and, therefore, unavailable for home schooling.

The employer's duty to accommodate and engage in an interactive process, therefore, did not attach.[7] The accommodation Ms. Jackson requested, the flexible work schedule, was due to her desire to home school her son. She did not request the

---

[7] When Ms. Jackson wrote a letter to Mr. Peleggi, she suggested the two part-time librarian option as a way to manage the increased outreach responsibilities of the children's librarian. It appears, from her letter, that Ms. Jackson also was indicating a preference that she not perform the outreach activities. At trial Ms. Jackson testified she could have done the outreach activities and that she would have arranged transportation by having her husband, a full-time dentist in private practice, drive her to various locations as necessary. Although Ms. Jackson mentioned the outreach transportation issues in her meeting with Ms. Newell, there is no evidence that this potential accommodation was discussed between Ms. Jackson and Ms. Newell. The transportation issues that may have arisen had Ms. Jackson accepted the full-time position, however, were not the reason for Ms. Jackson's termination. Rather, the Crozer Library terminated her because she did not want the full-time position; she wanted flexible hours.

accommodation because of her disability. Since the accommodation was not requested because of her disability, and the Crozer Library did not view her request as due to her disability, the Crozer Library had no duty to engage in the interactive process. See Colwell, 602 F.3d at 504 (requiring, as an element of establishing a breach of the duty to provide reasonable accommodations, that "the employee requested accommodations or assistance for his or her disability").

In Colwell v. Rite Aid Corp., the plaintiff requested she be placed only on daytime shifts because her vision impairment precluded her from driving at night. 602 F.3d at 498. The Third Circuit held "under certain circumstances the ADA can obligate an employer to accommodate an employee's disability-related difficulties in getting to work, if reasonable." Unlike the plaintiff in Colwell, Ms. Jackson did not request an accommodation because of "disability-related difficulties in getting to work." Ms. Jackson and Dr. Jackson testified that the full-time schedule would not have caused a problem. Dr. Jackson would have been able to drive Ms. Jackson. The evidence establishes Ms. Jackson wanted flexibility because of the family's desire to continue to home school their son.

There is no evidence in this case that the Crozer Library was motivated to terminate Ms. Jackson because of her disability. Nor is there any evidence that the Crozer Library changed the children's librarian position from part time to full time to make it more difficult for Ms. Jackson to perform the job and, therefore, to force her out. It

appears that Crozer Library legitimately wanted to make the children's librarian position a full-time position. In addition, there is no evidence Ms. Jackson requested the accommodation of flexible hours because of her disability. Therefore, the Crozer Library had no duty to provide a reasonable accommodation or engage in an interactive process.

For these reasons, I do not believe the plaintiff has satisfied the third element of the <u>Stultz v. Reese Brothers</u>' test. The adverse employment action was not taken because of discrimination. Ms. Jackson was offered the full-time job and she attempted to redefine the job itself to conform with her child's home schooling.

## II.  Retaliation

The PHRA provides: "It shall be an unlawful discriminatory practice . . . [f]or any . . . employer . . . to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act." 43 Pa. Cons. Stat. § 955(d).[8] "To establish a prima facie case of retaliation . . . , a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's

---

[8] The anti-retaliation provisions of the PHRA are "to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." <u>Fogleman v. Mercy Hospital, Inc.</u>, 283 F.3d 561, 567 (3d Cir. 2002).

-15-

adverse action." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997) (citing Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997)). If a prima facie case of relationship is established, "the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action." Id. (citing Woodson, 109 F.3d at 920 n.2). If the employer advances a legitimate, non-discriminatory reason, "the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Id. (citing Woodson, 109 F.3d at 920 n.2).

"Protected activity . . . includes opposition to unlawful discrimination." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 322 (3d Cir. 2008) (citing Moore v. City of Phila., 461 F.3d 331, 340 (3d Cir. 2006)). The plaintiff need only prove she had an "'objectively reasonable' belief that the activity [she] opposes constitutes unlawful discrimination." Id. (citing Moore, 461 F.3d at 340). "Opposition to an illegal employment practice must identify the employer and the practice – if not specifically, at least by context." Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006); accord Barber v. CSX Distribution Serv., 68 F.3d 694, 701-02 (3d Cir. 2005) (holding a letter to an employer's Human Resources Department was not protected activity because it did not specifically complain about age discrimination, it was too vague to constitute opposition to an unlawful employment practice because it did not

"explicitly or implicitly" allege a protected characteristic was the basis for the adverse employment action).

Ms. Jackson fails to establish a prima facie case of retaliation. Although her letters to board members mention her disability, the letters' main focus was to communicate her desire to remain a part-time employee. The letters do not reasonably establish she was attempting to allege discrimination or request an accommodation due to a disability. The letters attempt to negotiate the full-time position. They suggest a way for the Crozer Library to save money by allowing her to work flexible hours or by hiring a second part-time employee.

Ms. Jackson, therefore, fails to establish a prima facie case that the Crozer Library retaliated against her in violation of the PHRA.[9]

---

[9] Even if Ms. Jackson did establish a prima facie case of retaliation, she failed to establish the Crozer Library's legitimate non-discriminatory reason was pretext for discrimination.
    The Crozer Library advanced a legitimate non-discriminatory reason for her termination, i.e., she did not want the full-time position. Ms. Jackson, therefore, must establish the Crozer Library's reason was false and the real reason was pretext. Ms Jackson has failed to do so. The Crozer Library believed a full-time librarian was required. Ms. Jackson wanted to negotiate this position. She wanted to have flexible hours or to fill the position with two part-time children librarians. She did not want flexible hours because of her disability. Rather, she wanted flexible hours to home school her son. Ms. Jackson and Dr. Jackson testified Dr. Jackson would have been able to drive her to work at 9:00 a.m. and pick her up at 5:00 p.m. He also would have been able to pick her up on the nights she worked late and on her scheduled Saturdays.

## **CONCLUSION**

For the reasons set forth above, judgment will be entered in favor of the J. Lewis Crozer Library and against Dorothy Jackson.

An appropriate order follows.